JANVIER, Judge.
The plaintiffs seek to recover in tort for humiliation and embarrassment and for loss of and injury to some of their personal effects, household goods, furniture, etc., which loss and damage they allege resulted when one of the defendants, Douglas Fleming, caused the other two defendants, Edmund Mayfield, Jr., and Fredrick Verdin, to demolish the building in which the plaintiffs were living and which belonged to the estate of which Fleming was the manager.
Fleming was held liable to Mrs. Billiot in the sum of $615, and to Thibodeaux in the sum of $325. There was judgment dismissing the suit as against the other two defendants, Mayfield, Jr., and Verdin. From this judgment Fleming appealed devolutively and suspensively. The two plaintiffs did not appeal, but in answer to the appeal prayed that the judgment be amended by an increase in the awards in the case of Mrs. Billiot to $1,575.50, and in the case of Felix Thibodeaux to $1,551. Also in their answer to the appeal of Fleming the two plaintiffs prayed that, insofar as the judgment ran in favor of Mayfield and Verdin, it be reversed and the judgment in their favor be solidary against all three defendants, Fleming, Mayfield and Verdin.
The record is made up of irreconcilable contradictory statements from which, with some hesitation, we state the following facts.
In the general area of Lafitte, which is a small settlement in the Parish of Jefferson on Bayou Barataría, is a tract of land known as Fleming Plantation which apparently now belongs to the heirs of Calvin Fleming who died on November 21, 1948. The property is now referred to in the record as belonging to a partnership which seems to be composed of the heirs of Calvin Fleming. On the plantation are located quite a number of buildings including probably eight or ten small houses, some of which are rented and some of which are used by employees of the Fleming family.
At sometime prior to the death of Calvin Fleming, Mrs. Billiot, who either at that time or shortly thereafter was divorced from her husband, with her family, consisting of herself and four children, moved into one of these small buildings. She says that Calvin Fleming gave her a written agreement to the effect that, since her 14 year old son was to work for Fleming for Six Dollars per week, she and her family might occupy the house rent free for an indefinite time. She says too that this occurred in 1942. The record rather convincingly shows that she did not move into the building until sometime later — probably not until 1946 or 1947. At sometime after that she established what they refer to as a “common-law” relationship with the other plaintiff, Thibodeaux, and from that time on they lived together in the house.
Thibodeaux is a boat operator and often was away from home for prolonged periods — sometimes weeks and sometimes months. Mrs. Billiot had relatives in Venice, a small town some miles down the Mississippi River. On or about June 26, 1953, while Thibodeaux had been away *134 from home for an extended period and while Mrs. Billiot had been away on a visit to relatives in Venice for a period said by defendants to have been several weeks or possibly as much as two months and said by Mrs. Billiot to have been four days, Fleming, who, for other purposes on the plantation, needed the materials of which the little house was constructed, gave orders to his employees, Mayfield and Verdin, to demolish the house in which were located various articles belonging to the two defendants. Fleming says that he was of the opinion that the plaintiffs had abandoned the premises.
There is considerable dispute as to the status of the plaintiffs; whether they were tenants or squatters. We think it unnecessary to reach a conclusion on this question. It was common knowledge that they had occupied the place for some years, and while Fleming may not have had personal knowledge that they were still occupying it, it is shown that a neighbor, who may have been interested in purchasing the land in question, indicated to Fleming that he would not be interested unless the plaintiffs could be removed from the place.
We quite agree with the District Judge that the other two defendants should not be held liable. They were employees of the defendant Fleming, acting under his orders and obviously had no knowledge as to whether he had taken the necessary legal steps for the eviction of the plaintiffs before they commenced the demolition of the building.
Counsel for defendants industriously cited many cases in each of which it was held that a relationship somewhat similar to that which existed here was not the relationship of landlord and tenant, and that in such a situation the owner of the properly may terminate the relationship at will.
We have no doubt at all that the owner of the property in this case could have legally terminated the occupancy of these two plaintiffs, but we also have no doubt that however difficult it may have been to locate them and to legally put an end to their occupancy, Fleming was not within his rights in demolishing the building and exposing to the elements such property as the plaintiffs did possess.
 The record leaves no doubt that when Mrs. Billiot moved into the building it was with at least the tacit consent of the then owner. When she remained there after the death of Calvin Fleming, it was the duty of those in charge of the estate, if they desired her to vacate, to take such legal steps as were necessary. When, with the consent of Mrs. Billiot, the other plaintiff Thibodeaux moved into the property, though he had no legal right as a tenant, he did have the right to expect that the house into which he put such property as he had would not be demolished and the property left exposed to the elements.
On the other hand, when we come to consider the extent of the damage suffered by the plaintiffs, we find the record far from convincing that there was any great amount of damage suffered by the property itself, or that either of plaintiffs felt very much humiliation or embarrassment.
It is shown that when Mrs. Billiot left to spend a week in Venice, she left the house unlocked and left no one in charge to take care of such meager effects as she and her “common-law” husband left in it. Surely she would not have done this had there really been in the house property of substantial value. A neighbor says that when he went to the place when it was about to be demolished, he looked through a window and that
"* * * it would have been hard to say if anybody was living in there or whether they had just moved off and just discarded what furniture was there, because it was all to pieces.”
He did say that “there was a stove which looked to be a good stove. And there was an old ice-box in the kitchen too.” We will discuss the stove later.
This witness also said that he saw the property after the building had been demolished and that in his opinion the proper *135 ty which was there was just about in the condition in which it was before the demolition. Remarkably enough, after the building was demolished and the plaintiffs learned that the house had been demolished and their property had been exposed to the elements, neither of them made any effort to salvage any of it. Mrs. Billiot said that she was too sick to do so, but that she told her brother to go and see if there was anything worth salvaging and that he took a few articles from the property.
The record shows that the stove which the witness referred to had been bought by Thibodeaux on a time payment plan; that he was behind in his payments and that the stove was repossessed. It appears that he was perfectly satisfied with this and we think that, as a result of the loss of the stove, he suffered no damage for which Fleming is liable. Gulf Coal & Coke Co. v. Bingaman, 6 La.App. 107.
We also have grave doubt as to whether Thibodeaux actually had two shotguns as he claims. There is some evidence to the contrary and the action of Thibodeaux in not even going to the place after the demolition is not such as would be expected of a person who had left a good deal of clothing, including a suit which had been purchased shortly before for $65, two shotguns, a valuable stove, and other property.
As to the damage of the property of Mrs. Billiot, she gave no details at all as to its condition, merely repeating several times that it was “all mashed down.”
Both of the plaintiffs gave evidence which indicated plainly that they were not greatly humiliated or embarrassed.
Our conclusion is that the awards are excessive and should be reduced. In the case of Mrs. Billiot $200 should amply compensate her for her loss and in the case of Thibodeaux, $100 is, we think, sufficient.
Accordingly, the judgment appealed from is amended by the reduction of the amount awarded to Mrs. Billiot to $200 and the reduction of the amount awarded to Thibodeaux is $100. As thus amended the judgment is affirmed, plaintiffs to pay cost of appeal, defendant, Fleming, to pay all. other costs.
Amended and affirmed,